**07 CV 3907**

**THE PARK LAW GROUP, LLC**
Attorneys for Plaintiff Easytex Corporation Limited
Chull S. Park, Esq. (CP2061)
Hyun Suk Choi, Esq. (HC4208)
23 S. Warren Street
2nd Floor
Trenton, New Jersey 08608

JUDGE JONES

MAY 18 2007

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASYTEX CORPORATION LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> PETER & FRANK OF NY, CORP., CHUL KYU KIM a/k/a KIM CHUL KYU a/k/a CHUK CHUL KIM a/k/a ROBERT CHUL KIM a/k/a CHUL KYOO KIM a/k/a CHULKYOO KIM a/k/a KIM K. CHUL, BARO SHIPPING CO., LTD., TOP TEN TRANS, INC., GFA, INC., 3 WIN INC., MERCURY, AMERICAN INTERNATIONAL LINE, INC., SOON CHAN HONG a/k/a SOON C. HONG a/k/a SOONCHAN C. HONG a/k/a SOON CHAN HONG a/k/a CHAN S. HONG a/k/a HONG S. CHAN a/k/a HONG SOON CHANG d/b/a SOONCHAN HONG CUSTOM HOUSE BROKER, STOP & STOR, jointly and severally, <br><br> Defendants. | Civil Action No. _____ <br><br><br> **VERIFIED COMPLAINT** <br><br> **ECF CASE** |

Plaintiff, Easytex Corporation Limited ("Easytex" or "Plaintiff"), by and through

its undersigned counsel, alleges on information and belief as follows:

### JURISDICTION AND VENUE

1.      There are admiralty and maritime claims within the meaning of Rule 9(h)

of the Federal Rules of Civil Procedure.

2.    This Court has exclusive subject matter jurisdiction over this action based upon 28 U.S.C § 1333.

3.    This Court also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the citizenship of the parties is diverse, and the amount in controversy exceeds $75,000.00 exclusive of costs.

4.    This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. §1367 because the additional claims of this action are so related to the admiralty and maritime claims in this action that they form part of the same case or controversy.

5.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

## PARTIES

6.    Easytex is a company organized and existing pursuant to the laws of the People's Republic of China ("China") with its principal principal business located at Flat B, 7/FL., Tai Fung Industrial Building, No.61, Hung To Road, Kwun Tong, Kowloon, Hong Kong, China of which business includes exporting textile goods to the United States.

7.    Defendant, Peter & Frank of NY, Corp. ("Peter & Frank"), is a corporation organized and existing pursuant to the laws of State of New York with its principal place of business located at 1239 Broadway, Room 810, New York, New York

10001 and is doing business within the jurisdiction of this Court.

8.       Upon information and belief, at all relevant times hereto, Peter & Frank was and now is engaged in business as purchaser and importer of certain textiles and garments to be sold throughout the United States.

9.       Upon information and belief, Peter & Frank is within the personal jurisdiction of this Court and resides within this District.

10.      Upon information and belief, Peter & Frank conducts business throughout the United States on a regular basis, transacts business in the State of New York, contracts and does supply goods and services in the State of New York, regularly solicits business in the State of New York, and derives substantial revenue from conducting business in the State of New York.

11.      Upon information and belief, Defendant, Chul Kyu Kim a/k/a Kim Chul Kyu a/k/a Chuk Chul Kim a/k/a Robert Chul Kim a/k/a Chul Kyoo Kim a/k/a Chulkyoo Kim a/k/a Kim K. Chul ("Kim"), resides at 13 Central Avenue, Apartment 2, Allendale, New Jersey 07401-1506.

12.      Upon information and belief, at all relevant times hereto, Kim was and now is engaged in business as purchaser and importer of certain textiles and garments to be sold throughout the United States.

13.      Upon information and belief, Kim conducts business throughout the United States on a regular basis, transacts business in the State of New York, contracts and does supply goods and services in the State of New York, regularly solicits business in the State of New York, and derives substantial revenue from conducting business in the State of New York.

14.     Upon information and belief, Defendant, Baro Shipping Co., Ltd. ("Baro Shipping"), is a corporation organized and existing pursuant to the laws of the Republic of Korea ("Korea") with its principal place of business located in Room 302, 352-26, Seogyo-Dong, Mapo-Gu, Seoul, Korea.

15.     Upon information and belief, at all relevant times hereto, Baro Shipping was and now is engaged in business as a nonvessel operating common carrier ("NVOCC") and international freight forwarder.

16.     Upon information and belief, Baro Shipping conducts business throughout the United States on a regular basis, transacts business in the State of New York, contracts and does supply goods and services in the State of New York, regularly solicits business in the State of New York, and derives substantial revenue from conducting business in the State of New York.

17.     Upon information and belief, Defendant, Top Ten Trans, Inc. ("Top Ten"), is a corporation organized and existing pursuant to the laws of the State of New Jersey with its principal place of business located at 99-A Murray Hill Parkway, East Rutherford, New Jersey 07073.

18.     Upon information and belief, at all relevant times hereto, Top Ten was and now is engaged in business as a freight forwarder; in particular, Top Ten was a forwarding agent in connection with the subject matter of this action.

19.     Upon information and belief, Top Ten conducts business throughout the United States on a regular basis, transacts business in the State of New York, contracts and does supply goods and services in the State of New York, regularly solicits business in the State of New York, and derives substantial revenue from conducting business in

the State of New York.

20.    Upon information and belief, Defendant, GFA, Inc. ("GFA"), is a corporation organized and existing pursuant to the laws of one of the states of the United States with its principal place of business located at 99-A Murray Hill Parkway, East Rutherford, New Jersey 07073.

21.    Upon information and belief, at all relevant times hereto, GFA was and now is engaged in business as a freight forwarder; in particular, GFA was a forwarding agent in connection with the subject matter of this action.

22.    Upon information and belief, GFA conducts business throughout the United States on a regular basis, transacts business in the State of New York, contracts and does supply goods and services in the State of New York, regularly solicits business in the State of New York, and derives substantial revenue from conducting business in the State of New York.

23.    Upon information and belief, Defendant, 3 Win, Inc. ("3 Win"), is a corporation organized and existing pursuant to the laws of the State of New York with its principal place of business located at 147-29 183rd Street, 2nd FL., Rm 201, Jamaica, New York 11413.

24.    Upon information and belief, at all relevant times hereto, 3 Win was and now is engaged in business as a company providing logistics support, including but not limited to transportation of goods by truck; in particular, 3 Win provided such services in connection with the subject matter of this action.

25.    Upon information and belief, 3 Win conducts business throughout the United States on a regular basis, transacts business in the State of New York, contracts

and does supply goods and services in the State of New York, regularly solicits business in the State of New York, and derives substantial revenue from conducting business in the State of New York.

26.    Upon information and belief, Defendant, Mercury ("Mercury"), is a company organized and existing pursuant to the laws of one of the states of the United States with its principal place of business located at 230-59 International Airport Center Boulevard., Suite 281, Springfield Garden, New York 11413.

27.    Upon information and belief, at all relevant times hereto, Mercury was and now is engaged in business as a company providing logistics support, including but not limited to transportation services of goods by truck and assistance with United States custom clearance issues; in particular, Mercury provided such services in connection with the subject matter of this action.

28.    Upon information and belief, Mercury conducts business throughout the United States on a regular basis, transacts business in the State of New York, contracts and does supply goods and services in the State of New York, regularly solicits business in the State of New York, and derives substantial revenue from conducting business in the State of New York.

29.    Upon information and belief, Defendant, American International Line, Inc. ("AIL"), is a corporation organized and existing pursuant to the laws of one of the states of the United States with its principal place of business located at 230-59 International Airport Center Blvd., Suite 281, Springfield Garden, New York 11413.

30.    Upon information and belief, at all relevant times hereto, AIL was and now is engaged in business as a company providing logistics support, including but not

limited to transportation services of goods by truck and assistance with United States custom clearance issues; in particular, AIL provided such services in connection with the subject matter of this action.

31.     Upon information and belief, AIL conducts business throughout the United States on a regular basis, transacts business in the State of New York, contracts and does supply goods and services in the State of New York, regularly solicits business in the State of New York, and derives substantial revenue from conducting business in the State of New York.

32.     Upon information and belief, Defendant, Soon Chan Hong a/k/a Soon C. Hong a/k/a Soonchan C. Hong a/k/a Soon Chan Hong a/k/a Chan S Hong a/k/a Hong S. Chan a/k/a Hong Soon Chang d/b/a Soonchan Hong Custom House Broker ("Hong"), resides at 4709 211th Street, Bayside, New York 11361-3222 with his business location at 16115 Rockaway Boulevard. Suite 209, Jamaica, New York 11434-5136.

33.     Upon information and belief, at all relevant times hereto, Hong was and now is engaged in business of assisting importers and exporters of certain goods United States customs clearance issues; in particular, Hong provided such services in connection with the subject mater of this action.

34.     Upon information and belief, Hong conducts business throughout the United States on a regular basis, transacts business in the State of New York, contracts and does supply goods and services in the State of New York, regularly solicits business in the State of New York, and derives substantial revenue from conducting business in the State of New York.

35.     Upon information and belief, Defendant, Stop & Stor, is a corporation

organized and existing pursuant to the laws of New York with its principal place of business located at 651 Willowbrook Road, Suite No. 203, Staten Island, New York 10314, with an additional business location at 534 63rd Street, Brooklyn, New York.

36.    Upon information and belief, at all relevant times hereto, Stop & Stor was and now is engaged in business as providing storage facilities and services; in particular, Stop & Stor provided such services at 534 63rd Street, Brooklyn, New York in connection with the subject matter of this action to Defendants.

37.    Upon information and belief, Stop & Stor conducts business throughout the New York on a regular basis, transacts business in the State of New York, contracts and does supply goods and services in the State of New York, regularly solicits business in the State of New York, and derives substantial revenue from conducting business in the State of New York.

## STATEMENT OF FACTS

38.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

39.    On or about May 15, 2006, Baro Shipping and JHS IN'T ("JHS"), another company located in China, approached Plaintiff regarding a purchase order for the manufacture of certain textile goods, including jean pants, ("the Goods").

40.    Baro Shipping offered to purchase the Goods from Plaintiff with the intention of reselling the Goods to a certain importer located in the United States, DCD Trade Services, LLC located at 11 East 44th Street, New York, New York 10017 ("the U.S. Importer") where JHS would simply serve as the primary exporter for the purchase

order.

41.     Baro Shipping acted as the broker of the purchase order between JHS and Plaintiff ("the Original Transaction").

42.     Baro Shipping represented to Plaintiff that once the U.S. Importer paid for the Goods to JHS, Baro Shipping and JHS would make payment for the value of the Goods to Plaintiff pursuant to the Original Transaction.

43.     Baro Shipping also represented to Plaintiff that Baro Shipping would arrange for transportation of the Goods from China to the United States as a freight forwarder and NVOCC for Plaintiff under the Original Transaction.

44.     Upon reliance on Baro Shipping's representations ensuring payment for the manufacture of the Goods, Plaintiff entered into a written contract with JHS ("the Purchase Order") in which Plaintiff agreed to sell the Goods to JHS with the representation by Baro Shipping that both Baro Shipping and JHS would ensure payment for the Purchase Order.

45.     Upon the execution of the Purchase Order between JHS and Plaintiff, Plaintiff contracted with certain other Chinese companies that were licensed to export goods from China ("the Subcontractors") regarding the manufacturing of the Goods.

46.     On or about July 13, 2006 and July 15, 2006, pursuant to the Purchase Order, Dolphin Logistics Co., Ltd. ("Dolphin Logistics"), a freight forwarding agent, loaded the Goods from the Subcontractors onto containers ("the Original Containers") and transported the Original Containers to the port of Yantian, China to be delivered to the U.S. Importer at the direction of JHS.

47.     Upon information and belief, Dolphin Logistics released the Original

Containers to the custody and control of Baro Shipping.

48.    Baro Shipping, as the NVOCC, issued certain bills of lading with regard to the Original Containers transported by Dolphin Logistics to the port located at Yantian, China.

49.    Upon information and belief, some of the Original Containers arrived in Tacoma, Washington a few weeks after the Original Containers were loaded onto an ocean carrier in Yantian, China.

50.    On or about July 29, 2006, Baro Shipping contacted Plaintiff and stated that the U.S. Importer filed bankruptcy and thus, neither the U.S. importer nor Baro Shipping and JHS would be able to make any payment for the Goods to Plaintiff pursuant to the Purchase Order.

51.    Baro Shipping suggested to Plaintiff that the Goods be transported to Korea where Baro Shipping had an office since the Goods could not be returned to China.

52.    Plaintiff agreed with Baro Shipping's suggestion to allow Baro Shipping to maintain the custody of the Goods with the intention that Baro Shipping would secure a different purchaser of the Goods.

53.    Upon information and belief, some of the Original Containers were in Korea and were never transported to the United States, remaining in the custody and control of Baro Shipping.

54.    Upon information and belief, Baro Shipping contacted Top Ten, GFA, and AIL (collectively, "Baro Shipping's U.S. Agents") to arrange for the transportation of some of the Original Containers from Tacoma, Washington to Korea.

55.    Upon information and belief, immediately after Baro Shipping received

the some of the Original Containers in Korea, Baro Shipping shipped the Original Containers to certain companies located in the Republic of Philippines ("Philippines"), All Asia Garment Industries ("All Asia"), AAA Garment & Textile Manufacturing, Inc. ("AAA"), and Texport Corporation ("Texport"), that Plaintiff believes are agents of Baro Shipping.

56.    On or about August 14, 2006, Baro Shipping contacted Plaintiff regarding a new prospective purchaser located in the United States, Kim, ("the U.S. Purchaser") who offered to purchase the Goods.

57.    Baro Shipping persuaded Plaintiff to accept Kim's offer by stating that Plaintiff would not be paid for the Goods unless Plaintiff accepts Kim's offer.

58.    Upon reliance on Baro Shipping's representations regarding the U.S. Purchaser, on or about August 17, 2006, Plaintiff entered into a written contract with Peter & Frank, a company owned by Kim, in which Plaintiff agreed to sell the Goods to Peter & Frank where Kim personally was obligated to purchase the Goods for the sum of $1,469,740.00 ("the Contract").

59.    Baro Shipping represented to Plaintiff that Baro Shipping would again transport the Goods from where they were located to New York, New York where Kim was doing business.

60.    Upon information and belief, in relation to the Contract, Baro Shipping directed All Asia to issue a Commercial Invoice, invoice number APN060814, dated August 14, 2006 ("Invoice 1"); Invoice 1 was for 20,963 pieces of cotton men's woven pants contained in 873 cartons in the amount of $125,778.00.

61.    Upon information and belief, on or about August 14, 2006, in conjunction

11

with Invoice 1, All Asia issued a Packing List for Invoice 1 ("Packing List 1").

62.    Upon information and belief, in relation to the Contract, Baro Shipping directed All Asia to issue a Commercial Invoice, invoice number APN060815, dated August 15, 2006 ("Invoice 2"); Invoice 2 was for 20,856 pieces of cotton men's woven pants contained in 869 cartons in the amount of $125,136.00.

63.    Upon information and belief, on or about August 15, 2006, in conjunction with Invoice 2, All Asia issued a Packing List for Invoice 2 ("Packing List 2").

64.    Upon information and belief, in relation to the Contract, Baro Shipping directed All Asia to issue a Commercial Invoice, invoice number APN060817, dated August 17, 2006 ("Invoice 3"); Invoice 3 was for 19,307 pieces of cotton men's woven pants contained in 804 cartons in the amount of $115,842.00.

65.    Upon information and belief, on or about August 17, 2006, in conjunction with Invoice 3, All Asia issued a Packing List for Invoice 3 ("Packing List 3").

66.    Upon information and belief, in relation to the Contract, Baro Shipping directed AAA to issue a Commercial Invoice, invoice number APO6US148, dated August 21, 2006 ("Invoice 4"); Invoice 4 was for 19,032 pieces of cotton men's woven pants contained in 793 cartons in the amount of $114,192.00.

67.    Upon information and belief, on or about August 21, 2006, in conjunction with Invoice 4, AAA issued a Packing List for Invoice 4 ("Packing List 4").

68.    Upon information and belief, in relation to the Contract, Baro Shipping directed AAA to issue a Commercial Invoice, invoice number APO6US152, dated August 21, 2006 ("Invoice 5"); Invoice 5 was for 22,080 pieces of cotton men's woven pants contained in 920 cartons in the amount of $132,480.00.

69.    Upon information and belief, on or about August 21, 2006, in conjunction with Invoice 5, AAA issued a Packing List for Invoice 5 ("Packing List 5").

70.    Upon information and belief, in relation to the Contract, Baro Shipping directed Texport to issue a Commercial Invoice, invoice number TP060818, dated August 18, 2006 ("Invoice 6"); Invoice 6 was for 23,160 pieces of cotton men's woven pants contained in 965 cartons in the amount of $138,960.00.

71.    Upon information and belief, on or about August 18, 2006, in conjunction with Invoice 6, Texport issued a Packing List for Invoice 6 ("Packing List 6").

72.    Upon information and belief, in relation to the Contract, Baro Shipping directed Texport to issue a Commercial Invoice, invoice number TP060821, dated August 21, 2006 ("Invoice 7"); Invoice 7 was for 21,576 pieces of cotton men's woven pants contained in 899 cartons in the amount of $129,456.00.

73.    Upon information and belief, on or about August 21, 2006, in conjunction with Invoice 7, Baro Shipping's Philippine Agent III issued a Packing List for Invoice 7 ("Packing List 7").

74.    Upon information and belief, in Manila, Philippines, Baro Shipping shipped some of the Goods on an ocean carrier, voyage Hyundai Independence 104E, sailing to the United States on or about August 19, 2006.

75.    Upon information and belief, in Manila, Philippines, Baro Shipping shipped some of the Goods on an ocean carrier, voyage Hyundai Independence 057E, sailing to the United States on or about August 23, 2006.

76.    Upon information and belief, on or about August 19, 2006, Baro Shipping issued a bill of lading, dated August 19, 2006 ("BOL1") indicating that the cargo

pursuant to Invoice 1 was loaded into one container, HDMU6345866/305975 ("Contanier 1").

77.     Upon information and belief, on or about August 19, 2006, Baro Shipping issued a bill of lading, dated August 19, 2006 ("BOL2") indicating that the cargo for Invoice 2 was loaded into one container, HDMU6076113/147348 ("Container 2").

78.     Upon information and belief, on or about August 19, 2006, Baro Shipping issued a bill of lading, dated August 19, 2006 ("BOL3") indicating that the cargo for Invoice 3 was loaded into one container, HDMU6189207/306077 ("Container 3").

79.     Upon information and belief, on or about August 23, 2006, Baro Shipping issued a bill of lading, dated August 23, 2006 ("BOL4") indicating that the cargo for Invoice 4 was loaded into one container, HDMU6369277/147353 ("Container 4").

80.     Upon information and belief, on or about August 23, 2006, Baro Shipping issued a bill of lading, dated August 23, 2006 ("BOL5") indicating that the cargo for Invoice 5 was loaded into one container, HDMU6454390/159584 ("Container 5").

81.     Upon information and belief, on or about August 23, 2006, Baro Shipping issued a bill of lading, dated August 23, 2006 ("BOL6") indicating that the cargo for Invoice 6 was loaded into one container, HDMU6454358/159536 ("Container 6").

82.     Upon information and belief, on or about August 23, 2006, Baro Shipping issued a bill of lading, dated August 23, 2006 ("BOL7") indicating that the cargo for Invoice 7 was loaded into one container, HDMU6454384/159499 ("Container 7").

83.     Upon information and belief, in September of 2006, Containers 1 through 3 arrived at the port in Long Beach, California.

84.     Upon information and belief, in September of 2006, Containers 4 through

7 arrived at the port in Tacoma, Washington.

85.    Upon information and belief, Baro Shipping contacted Baro Shipping's U.S. Agents to arrange for the transportation of all seven containers to New York, New York, the final place of delivery pursuant to BOLs 1 through 7.

86.    Upon information and belief, Baro Shipping and Baro Shipping's U.S. Agents contracted with 3 Win and Mercury to transport all or some of the containers to the final place of delivery in New York, New York.

87.    Upon information and belief, Baro Shipping, Baro Shipping's U.S. Agents, 3 Win and Mercury contracted with Hong to request Hong assistance with certain United States customs clearance issues.

88.    Upon information and belief, Baro Shipping's U.S. Agents, 3 Win, Mercury and Hong improperly released and received the Goods, without the proper presentation and receipt of the applicable shipping documents including but not limited to, the endorsed bills of lading.

89.    Upon information and belief, the U.S. Purchaser, Baro Shipping's U.S. Agents, 3 Win, Mercury and Hong transported the Goods to Stop Stor, located in Brooklyn, New York.

90.    Upon information and belief, on or about September 27, 2006, Stop Stor improperly released the Goods to the U.S. Purchaser, Baro Shipping's U.S. Agents, 3 Win, Mercury or Hong.

91.    Upon information and belief, on or about September 27, 2006, the U.S. Purchaser received the Goods pursuant to the Contract, but has refused to pay for the Goods under the Contract to Plaintiff.

92.     On or about September 27, 2006, Kim executed an agreement acknowledging receipt of the Goods and his liability to pay for the full value of the Goods by October 7 of 2006 ("Kim's Acknowledgment").

93.     Kim also has refused to pay for the Goods to date pursuant to Kim's obligations under the Contract and Kim's Acknowledgment.

## COUNT I:  MISDELIVERY OF CARGO
## AS TO ALL DEFENDANTS

94.     Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

95.     Upon information and belief, Defendants improperly released the Goods, which are ultimately in the possession of Peter & Frank and Kim, without the proper presentation of the applicable shipping documents including but not limited to, the endorsed bills of lading.

96.     Defendants did not receive duly endorsed bills of lading in exchange for the Goods or delivery order.

97.     Defendants retained responsibility during the course of shipment to the port of discharge.

98.     Defendants are liable for misdelivery of cargo because Defendants released the Goods without receiving the proper documentation, including but not limited to any applicable endorsed bills of lading.

## COUNT II: BREACH OF CONTRACT AS TO
## PETER & FRANK AND KIM

99.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

100.    Plaintiff and Peter & Frank and Kim duly executed the Contract in which Plaintiff would provide the Goods to Peter & Frank and Kim in exchange for Peter & Frank and Kim's promise to make payment for the value of the Goods to Plaintiff.

101.    Kim executed Kim's Acknowledgment in favor of Plaintiff, where Kim agreed to pay for the full value of the Goods by October 7 of 2006.

102.    Plaintiff provided the Goods to Peter & Frank and Kim pursuant to the Contract.

103.    Peter & Frank and Kim received the Goods from Plaintiff.

104.    Peter & Frank and Kim have refused to make payment under the Contract and Kim's Acknowledgment to date.

## COUNT III: BREACH OF CONTRACT AS TO BARO SHIPPING AND BARO SHIPPING'S U.S. AGENTS

105.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

106.    BOLs 1 through 7 are contracts of carriage where Baro Shipping was obligated to deliver the Goods to a specified destination and consignee where Plaintiff was the beneficiary.

107.    Baro Shipping and Baro Shipping's U.S. Agents breached the contracts of carriage by releasing goods to certain parties without production of the proper documentation, including but not limited to any applicable endorsed bills of lading.

108.    Baro Shipping and Baro Shipping's U.S. Agents are liable to Plaintiff for

breach of contract and caused the Goods to be unlawfully released to the U.S. Purchasers.

## COUNT IV: UNJUST ENRICHMENT AS TO
## PETER & FRANK AND KIM

109.    In relying on Peter & Frank and Kim's promise to pay for the Goods, Plaintiff provided the Goods to Peter & Frank and Kim.

110.    Peter & Frank and Kim received the Goods but have refused to pay for the value of the Goods.

111.    Peter & Frank and Kim received a benefit at the expense of Plaintiff.

## COUNT V: CONVERSION AS TO
## ALL DEFENDANTS

112.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

113.    Defendants are liable to Plaintiff for conversion for delivering and releasing the Goods to an entity not entitled to the Goods without receiving the proper documents including but not limited to any applicable endorsed bills of lading.

114.    Defendants unlawfully possess the Goods without payment to Plaintiff.

## COUNT VI: NEGLIGENCE AS TO
## ALL DEFENDANTS

115.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

116.    Defendants improperly released the Goods without the proper documentation including but not limited to any applicable endorsed bills of lading as is necessary in maritime practice.

117.    Defendants owed a duty to Plaintiff to ensure the proper delivery of the Goods to the rightful recipient.

118.    Defendants breached their duty to Plaintiff by negligently, wantonly and recklessly releasing the Goods without receiving the proper documentation including, but not limited to, any applicable endorsed bills of lading.

119.    Defendants' negligence caused substantial damage to Plaintiff because Defendants released the Goods improperly.

120.    Defendants are in possession of the Goods under BOLs 1 through 7 from approximately September 27, 2006 without paying the monies rightfully due to Plaintiff.

## COUNT VII: FRAUD AS TO
## BARO SHIPPING, BARO SHIPPING'S U.S. AGENTS,
## PETER & FRANK, KIM, 3 WIN, MERCURY AND HONG

121.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

122.    Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win, Mercury, and Hong made false representations that they would make payments for the value of the Goods to Plaintiff and make proper delivery of the Goods once Plaintiff provides the Goods to them.

123.    Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win, Mercury, and Hong fraudulently induced Plaintiff to enter into a contract with Peter & Frank and Kim.

124.    Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win, Mercury, and Hong made such false representations with knowledge that they would not

make payment for the Goods.

125.    Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win, Mercury, and Hong intended to defraud Plaintiff.

126.    Plaintiff justifiably relied upon the false representations of Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win, Mercury, and Hong, and provided the Goods to them.

127.    Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win, Mercury, and Hong caused damages to Plaintiff.

## COUNT VIII: CIVIL CONSPIRACY AS TO ALL DEFENDANTS

128.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

129.    Defendants agreed to defraud Plaintiff by inducing Plaintiff to enter into a contract with Peter & Frank and Kim and to provide the Goods to them.

130.    Defendants wrongfully possessed, transported and released the Goods, which are ultimately in the possession of Peter & Frank and Kim.

## COUNT IX: PUNITIVE DAMAGES AS TO BARO SHIPPING, BARO SHIPPING'S U.S. AGENTS, PETER & FRANK, KIM, 3 WIN, MERCURY AND HONG

131.    Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win, Mercury, and Hong defrauded Plaintiff by inducing Plaintiff to enter into contracts with them, and to provide the Goods to them under such contracts.

132.    Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win,

Mercury, and Hong wrongfully exercised unauthorized dominion over the Goods in interference with Plaintiff's legal title over the Goods.

133.   The tortious conduct of Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win, Mercury, and Hong is gross and morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to civil obligations.

134.   The egregious conduct of Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win, Mercury, and Hong is part of a pattern directed at the public generally.

   **WHEREFORE**, Plaintiff prays:

   That judgment may be entered in favor of Plaintiff against Defendants, jointly and severally, for the amount of Plaintiff's damages in the amount of **$1,469,740.00**, together with interest, costs, attorneys fee and the disbursements of this action;

   That judgment may be entered against Baro Shipping, Baro Shipping's U.S. Agents, Peter & Frank, Kim, 3 Win, Mercury, and Hong for their gross, egregious and morally reprehensible conduct, and of such wanton dishonesty as to imply a criminal indifference to civil obligations;

   That this Court will grant to Plaintiff such other and further relief as may be just and proper.

                              **THE PARK LAW GROUP, LLC**
                              Attorneys for Plaintiff Easytex Corporation Limited

                    By:   _____
                              Chull S. Park, Esq. (CP2061)

Dated: May 18, 2007

## VERIFICATION

I am authorized to make this Verification on behalf of Plaintiff Easytex Corporation Limited, the facts set forth in this pleading are true and correct to the best of my knowledge, except as to matters therein stated upon information and belief, and as to these matters, I believe them to be true; the sources of my information and the grounds of my belief are documents in the possession of Plaintiff and reports made to me by officers, employees, representatives and agents of Plaintiff.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
**Kent (Kean Wai) Wong**
Director
Easytex Corporation Limited

Dated: _May 18, 2007_